**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

JAMONE WILLIAMS,

      Plaintiff,

      v.

QUALITY CORRECTIONAL CARE, LLC,
NURSE TESSA LEHMAN, NURSE
JEANIE HERMAN, NURSE JACQUELINE
RYAN, NURSE KELLY STUDEBAKER,
NURSE JANICE GILBERT, MIKHAIL
GALPERIN MD, and ALLEN COUNTY
SHERIFF TROY HERSHBERGER,

      Defendants.

CAUSE NO.: 1:24-CV-58-TLS

**OPINION AND ORDER**

This case arises in part out of the conditions of confinement—including overcrowding

and poor sanitation—Plaintiff Jamone Williams experienced at the Allen County Jail during

February of 2022, and his diagnosis of a MRSA infection. On February 28, 2022, the Plaintiff

was transferred from the Allen County Jail to Parkview Hospital where he was admitted until

April 25, 2022, and treated for a MRSA infection and other conditions. Almost two years later,

on February 8, 2024, the Plaintiff filed his Complaint for Violation of Civil Rights [ECF No. 1]

in this Court. On March 28, 2024, the Plaintiff filed the operative Amended Complaint for

Violation of Civil Rights [ECF No. 27], bringing as is relevant here, a § 1983 *Monell* claim

against Defendant Sheriff Troy Hershberger in his official capacity for an underlying Eighth

Amendment violation based on unconstitutional conditions of confinement (Count II).[1]

---

[1] The Plaintiff also brought a § 1983 Eighth Amendment claim for deliberate indifference to serious
medical needs (Count I) and an Indiana state law medical malpractice claim (Count III) against Defendant
Quality Correctional Care, LLC and the six nurse and doctor Defendants (the medical defendants). In its
March 20, 2026 summary judgment ruling referenced below, the Court granted summary judgment in

On April 28, 2025, the Plaintiff filed a Motion for Partial Summary Judgment as to Liability [ECF No. 46], requesting summary judgment, as is relevant here, on his § 1983 *Monell* claim against Defendant Sheriff Hershberger. Defendant Sheriff Hershberger filed a response [ECF No. 56] on May 27, 2025, and the Plaintiff filed a reply [ECF No. 64] on June 10, 2025.

On March 20, 2026, the Court entered an Opinion and Order [ECF No. 67] denying the Plaintiff's Motion for Summary Judgment, as is relevant here, on the Plaintiff's *Monell* claim against Defendant Sheriff Hershberger for an underlying Eighth Amendment violation for unconstitutional conditions of confinement at the Allen County Jail. Because the Court determined that the Plaintiff had not established a genuine dispute of material fact as to the *Monell* claim against Defendant Sheriff Hershberger, the Court also set a deadline for the Plaintiff to file a summary judgment response brief addressing why summary judgment should not instead be granted for Defendant Sheriff Hershberger. The Court then set a deadline for Defendant Sheriff Hershberger to file a reply, if any, in support of summary judgment on the claim. The Plaintiff timely filed the response [ECF No. 70], and Defendant Sheriff Hershberger timely filed the reply [ECF No. 71].

This matter is now before the Court on the consideration, sua sponte, of summary judgment on the § 1983 *Monell* claim against Defendant Sheriff Hershberger in his official capacity for an underlying Eighth Amendment violation for unconstitutional conditions of confinement.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

favor of the medical defendants on the federal claims in Count I. *See* Mar. 20, 2026 Op. & Order, ECF No. 67.

Civ. P. 56(a). The movant may discharge this burden by "either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citation omitted). In response, the non-movant "must make a sufficient showing on every element of his case on which he bears the burden of proof; if he fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In ruling on a motion for summary judgment, a court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citation omitted). However, "inferences relying on mere speculation or conjecture will not suffice." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009).

"A district judge is authorized to grant summary judgment to a party that has not requested it; he is not required to conduct a trial when there is no genuine issue of material fact, just because the parties . . . [did not] notice the absence of any triable issues." *Hunger v. Leininger*, 15 F.3d 664, 669 (7th Cir. 1994) (citation omitted). "However, 'granting summary judgment sua sponte warrants special caution' and generally requires that the party against whom summary judgment is entered have notice and an opportunity to present its evidence." *Golden Years Homestead, Inc. v. Buckland*, 557 F.3d 457, 462 (7th Cir. 2009) (citation omitted). In this case, the Court finds that the Plaintiff has been provided such notice and an opportunity to present his evidence. *See* ECF Nos. 67, 70.

**BACKGROUND AND MATERIAL FACTS**

From February 2020 through February 2022, the Plaintiff was a prisoner at the Allen County Jail and suffered from Type I diabetes. ECF No. 46-1, ¶¶ 2, 3. He was "housed with two other individuals in a cell that was designed to house only two people." *Id*. ¶ 4. And his "cell, the dayroom, and the showers were unclean," and his "feet were constantly exposed to unsanitary conditions." *Id*. ¶¶ 5, 6. "Medical staff never provided [him] with diabetic footwear." *Id*. ¶ 7. "The footwear that [he] was provided by the Allen County Sheriff had already been used by previous inmates." *Id*. ¶ 8.

Also, "[d]ue to a burst pipe, [his] cell was flooded with wastewater from the toilet." *Id*. ¶ 9. This occurred "sometime between January 6, 2022 and January 31, 2022." ECF No. 64-1, ¶ 6. Plus, at the Allen County Jail, "[t]he shower drains would also overflow with wastewater" and "constantly back[] up with sewer water." ECF No. 46-1, ¶ 10; ECF No. 64-1, ¶ 7. "The cleaning supplies available to [the Plaintiff] . . . consisted of a dirty mop, dirty mop bucket, disinfectant ball, and brooms." ECF No. 64-1, ¶ 4. However, "[s]ome of the guards at the Allen County Jail did not allow cleaning." *Id*. ¶ 5.

On February 26, 2022, the Plaintiff "told medical staff that I could not walk to medical due to the pain" in his left leg. ECF No. 46-1, ¶¶ 22, 24.

On February 27, 2022, the Plaintiff "asked a jail employee, Officer Alexander, to notify medical staff that [he] needed medical attention." *Id*. ¶ 27. And "[l]ater that same evening [he] told Officer Vance Pruden that [he] needed medical attention." *Id*. ¶ 30.

"On February 28, 2022, [the Plaintiff] was unable to report to medical because of the extreme pain and [his] other conditions." *Id*. ¶ 32. "Dr. Galperin came to [the Plaintiff's] cell, and [the Plaintiff] reported to him that [he] could not place any weight on [his] left foot." *Id*. ¶

33. The Plaintiff "told Dr. Galperin that it felt like [his] foot was about to explode and that [he] thought that [his] infection was getting worse." *Id*. ¶ 34. He additionally "told Dr. Galperin that it was painful to place any weight on [his] left foot." *Id*. ¶ 35. He "also reported to Dr. Galperin that [he] had nausea and chills." *Id*. ¶ 36. "Later that afternoon, [he] began vomiting and began feeling increasingly weaker." *Id*. ¶ 37.

On the evening of February 28, 2022, the Plaintiff was transferred from the Allen County Jail to the hospital, Parkview, where he was first seen in the emergency room and admitted on March 1, 2022. ECF No. 46-3, p. 53 of 54; *see* ECF No. 46-5, pp. 3, 9 of 78. At the emergency room, the provider "[did] not see an obvious source [of] infection left foot is swollen warm" and indicated the Plaintiff "[will] be admitted with broad-spectrum antibiotics." ECF No. 46-5, p. 8 of 78. And in the emergency room, the Plaintiff was diagnosed with Bandemia and an acute kidney injury and was treated with Vancomycin and Zosyn. *Id*., pp. 9, 31 of 78. Also, the Plaintiff's hospital record indicates that "[p]reliminary results from blood cultures of 2/28/2022 show[ed] staph and mecA gene present." *Id*., p. 1 of 78. His April 25, 2022 hospital discharge summary stated, "Blood culture grew MRSA." *Id*., p. 36 of 78.

The Plaintiff's medical expert Dr. Ryan Herrington opined, "Diabetic patients, particularly those who have nerve damage are at risk for developing infections and ulcers of their feet because of the loss of protective sensation." ECF No. 46-2, p. 34.

The Plaintiff's second medical expert Dr. Philip Levin stated that "[i]t is known that infections spread quickly in diabetics." ECF No. 46-6, p. 2, ¶ 11. Dr. Levin also stated that the Plaintiff and "his infection were exposed to the elements of the dirty jail" and that the Plaintiff should have been "kept away from the dirty jail." *Id*., p. 3, ¶ 13. Further, he observed that "Dr. Galperin and other Quality Correctional Care employees asked [Plaintiff's] wife to bring a

pumice stone and he and his infection were exposed to the elements of the dirty jail." ECF No.
46-6, p. 3, ¶ 13. And Dr. Levin opined that the "shaving of the sore on [Plaintiff's] left foot
worsened the infection." *Id*., p. 3, ¶ 14. He also stated that this "worsened the infection,
especially considering the dirty conditions of the jail." ECF No. 59-7, p. 3, ¶ 15.

### SUA SPONTE RULING ON SUMMARY JUDGMENT ON THE § 1983 *MONELL* CLAIM AGAINST DEFENDANT SHERIFF HERSHBERGER IN HIS OFFICIAL CAPACITY BASED ON AN UNDERLYING EIGHTH AMENDMENT VIOLATION FOR UNCONSTITUTIONAL CONDITIONS OF CONFINEMENT

"Section 1983 does not allow vicarious-liability theories against municipalities and
higher-level decisionmakers like [Sheriff Hershberger]." *Zemlick v. Burkhart*, 164 F.4th 1004,
1015 (7th Cir. 2026) (citing *Burks v. Raemisch*, 555 F.3d 592, 593 (7th Cir. 2009)). "Instead,
such parties may be held accountable for constitutional violations they cause . . . by official
policy or custom." *Id*. (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). This
means that there is no liability under *Monell* without an underlying constitutional violation. *City
of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

The Eighth Amendment prohibits conditions of confinement that deny inmates "the
minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir.
2008) (citations omitted). In order to recover on his claim for an Eighth Amendment violation
based on unconstitutional conditions of confinement, the Plaintiff must show causation, among
other elements, in that he must present evidence that the conditions of confinement at the Allen
County Jail caused his injury. *See Gray v. Hardy*, 826 F.3d 1000, 1006 (7th Cir. 2016) ("Gray
must do more than demonstrate a triable issue of fact with respect to the conditions he faces; he
must also show that he suffered some cognizable harm from the overall lack of a sanitary
environment . . . ." (citation omitted)); *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997)
(finding insufficient evidence of an Eighth Amendment violation when "[the prisoner] . . .

offered only conclusory allegations, without backing from medical or scientific sources, that the rank air exposed him to diseases and caused respiratory problems which he would not otherwise have suffered"); *Harris v. County of Cook*, No. 19-CV-4598, 2024 WL 1702678, at *11 (N.D. Ill. Apr. 19, 2024) ("Causation looms large, too. Harris must point to evidence of a cognizable injury based on the conditions of confinement. He cannot rely on his own guesswork to show that inadequate ventilation caused an eye injury. He must present evidence that the conditions of confinement caused the injury."). More broadly, "[i]n order to succeed in a § 1983 suit, [the Plaintiff] must 'establish not only that a state actor violated his constitutional rights, but also that the violation caused the plaintiff injury or damages.'" *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019) (quoting *Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011)).

In the Amended Complaint, the Plaintiff alleges that overcrowding and poor sanitation at the Allen County Jail caused his MRSA infection. To support this allegation, in his response brief, the Plaintiff points to the following statements from his affidavit: (1) he was housed with two other individuals in a cell that was designed to house only two people; (2) he had an unclean cell, dayroom, and showers; (3) the showers at the Allen County Jail constantly backed up with sewer water; (4) he was exposed to wastewater from the toilet due to a burst pipe between his cell and an adjoining cell; (5) his feet were constantly exposed to unsanitary conditions; and (6) he was not provided diabetic footwear and the provided footwear had been previously used.

From these facts the Court presumes the Plaintiff is attempting to establish the unconstitutional conditions of: (1) overcrowding by being housed with two other individuals in a cell designed for only two people; and (2) poor sanitation from an unclean cell based on wastewater from a burst pipe in his cell, unclean showers based on being backed up with sewer water, and previously used footwear. Defendant Sheriff Hershberger does not dispute that these

are unconstitutional conditions of confinement. However, the Court notes that the Plaintiff does not define what he meant by exposure to an "unclean" dayroom; thus, the statement is conclusory, and the Court need not address it. Therefore, in this context, to demonstrate that Defendant Sheriff Hershberger is liable in his official capacity, the Plaintiff must establish a causal link between his MRSA infection and his exposure to the two cellmates, showers backed up with sewer water, toilet wastewater in his cell, or previously used footwear. *See Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 307 (7th Cir. 2010). That is the Plaintiff needs some evidence that the two cellmates, showers backed up with sewer water, toilet wastewater in his cell, or previously used footwear were the "moving force" behind the Plaintiff's contraction of the MRSA infection in order for a reasonably jury to conclude that any of those conditions caused his MRSA infection. *Id*. at 306.

The Plaintiff attempts to establish the causal link between his MRSA infection and his exposure to the two cellmates, showers backed up with sewer water, toilet wastewater in his cell, or previously used footwear with the following opinions by his medical experts: (1) diabetic patients, particularly those who have nerve damage are at risk for developing infections and ulcers of their feet because of the loss of protective sensation (Dr. Herrington); (2) it is known that infections spread quickly in diabetics (Dr. Levin); (3) the Plaintiff and his infection were exposed to the elements of the dirty jail (Dr. Levin); and (4) the Plaintiff should have been kept away from the dirty jail (Dr. Levin).

However, the medical expert opinions miss the critical point for the purposes of the Plaintiff's *Monell* claim based on an underlying Eighth Amendment violation for unconstitutional conditions of confinement at the Allen County Jail and his MRSA infection. Even if the Plaintiff's medical experts had established that the Plaintiff contracted MRSA at the

Allen County Jail, merely contracting MRSA at the Allen County Jail is not sufficient to support the causation element of the Plaintiff's *Monell* claim. *See Gray*, 826 F.3d at 1006; *Dixon*, 114 F.3d at 645; *Gabb*, 945 F.3d at 1032; *Harris*, 2024 WL 1702678, at *11. For contracting MRSA at the Allen County Jail does not establish that an unconstitutional condition of confinement at the Allen County Jail—namely the Plaintiff's exposure to the two cellmates, showers backed up with sewer water, toilet wastewater in his cell, or previously used footwear—was the moving force behind the Plaintiff's MRSA infection. Therefore, any inference from the medical experts' opinions that the two cellmates, showers backed up with sewer water, toilet wastewater, or previously used footwear caused the Plaintiff's MRSA infection would need to be made by relying on speculation, which "[does] not suffice." *Stephens*, 569 F.3d at 786; *see Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) ("While Maureen is entitled, as the nonmoving party, to all reasonable inferences in her favor, 'inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion.'" (quoting *Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 517 F.3d 470, 473 (7th Cir. 2008))).[2]

Against that conclusion, the Plaintiff also asserts the following to establish that he was infected with MRSA at the Allen County Jail: the incubation period for MRSA is 4–10 days, the February 24, 2022 medical record from the Allen County Jail stating that he did not have any signs of an infection, the February 28, 2022 hospital medical record stating that preliminary

---

[2] The Plaintiff asserts that *Herzog* is distinguishable as involving "a plaintiff's allegations that her deceased husband's employer or insurer cancelled a life insurance policy after the decedent was diagnosed with cancer" and a "plaintiff speculat[ing] that someone other than her husband terminated the policy on the basis that she could not conceive why her husband would have canceled the policy when he knew his death was imminent." Pl. Resp. 10, ECF No. 70. He then states that "evidence other than Plaintiff's own speculation, including medical records and expert testimony, create the reasonable inference that Plaintiff contracted his infection at the Allen County Jail and that the conditions at the jail were the moving force for his injuries." *Id*. at 10–11. However, the Plaintiff provides no further analysis to show that the decision in *Herzog* dictates a different result here. Thus, the Court need not address his assertion.

results from a blood culture showed staph and mecA gene present, and the April 25, 2022

hospital discharge summary stating that the blood culture grew MRSA. Those are not sufficient

for establishing causation for the same reason that the medical experts' opinions are not

sufficient, as discussed in the above paragraph. Thus, the Court overrules as moot the

Defendant's objection to the evidence on MRSA's incubation period.

Additionally, the Plaintiff points to *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 865 (7th

Cir. 2010), to support his argument that "expert testimony [is] not required for a jury to conclude

that Plaintiff contracted his infection at the Allen County Jail and that the conditions at the jail

were the causation of that infection." Pl. Resp. 8, ECF No. 70. In *Cyrus*, the arrestee Nikolos

Cyrus died after an officer tased him during an arrest. 624 F.3d at 858. Cyrus' parents brought a

claim against the officer for violation of the Fourth Amendment based on the officer's purported

use of excessive force. *See id*. As to the issue of whether the taser caused the death of Cyrus, the

Seventh Circuit "noted, without expert testimony, causation will be difficult to establish." *Id*. at

864.

Nevertheless, the *Cyrus* court found that "the record contains enough evidence from

which a reasonable jury could conclude as a matter of lay judgment that the excessive use of

force—if indeed [the officer's] use of force was excessive and unreasonable—caused Cyrus's

death." *Id*. The court clarified its reasoning:

> The "primary facts" here include the close temporal proximity between the
> allegedly excessive force and Cyrus's death: Cyrus stopped breathing just a minute
> or two after being repeatedly shocked with the Taser, and this tight chronology
> bears on causation. Other evidence suggests that potential alternative causes of
> death may be ruled out. For example, the toxicology report, which the district court
> did not exclude, shows that Cyrus ingested no stimulants or narcotics other than a
> minimal amount of caffeine. There is no evidence that Cyrus had any prior injuries
> that could have caused his death during the confrontation with the officers, *see*
> *Brownell*, 950 F.2d at 1293 (refusing to find liability because plaintiff was also
> involved in a serious car accident that could have caused his injury), or that he

suffered from a preexisting condition that could have caused his cardiac arrest, *Lash v. Hollis*, 525 F.3d 636, 640 (8th Cir. 2008) (refusing to infer causation based on lay evidence because, inter alia, the victim possibly suffered from a preexisting medical condition). There is no evidence of any possible intervening causes of death. In short, . . . the record is not so wholly devoid of evidence on which a jury could find causation that [the officer] is entitled to judgment as a matter of law on this alternative basis.

*Id*. at 864.

However, facts similar to the primary facts in *Cyrus* are absent here. Whereas in *Cyrus* the record established that Cyrus was exposed to a single potential source of his death—repeated shocks from a taser—a minute or two before his death, here the Plaintiff does not identify a single source of his MRSA infection let alone an exposure that occurred within such close temporal proximity to his experiencing symptoms of MRSA. Instead, the Plaintiff identifies multiple potential exposures as the source of his MRSA infection including his two cellmates, showers backed up with sewer water, toilet wastewater in his cell, and previously used footwear without specifying when the exposures occurred in relation to when he first experienced the symptoms of his MRSA infection.

Also, the Plaintiff does not present evidence suggesting that either of his two cellmates had a MRSA infection, that MRSA was detected or likely present in the sewer water, toilet wastewater, or footwear and that he was exposed to any with close temporal proximity to his experiencing symptoms of MRSA, or how a MRSA infection could be transmitted from any of those exposures, such that a reasonable jury could conclude as a matter of lay judgment that one of those exposures caused the Plaintiff's MRSA infection. Thus, because the record is wholly devoid of evidence on which a reasonable jury could find causation, the Plaintiff's citation to *Cyrus* is unpersuasive.

11

The Court finds the reasoning applied in *Crawford v. Davis*, a case cited by Sheriff Hershberger, persuasive. In *Crawford*, the plaintiff asserted that "that the contaminated standing water in the showers at Dixon Springs caused his feet to develop fungal infections." 597 F. Supp. 3d 1243, 1245 (S.D. Ill. 2022). The court explained that "[t]o support that claim it is necessary that Crawford provide testimony to a reasonable degree of certainty that the particular contaminants in the water could and likely did bring about the fungal infections." *Id*. The court reasoned that "[t]o cross the causation bridge, [the plaintiff] must have scientific, technical or other specialized knowledge-based testimony." *Id*.

The Court finds the reasoning in *Crawford* applicable here and concludes that the Plaintiff must have scientific, technical, or other specialized knowledge-based testimony to a reasonable degree of certainty that the Plaintiff's exposure to the two cellmates, showers backed up with sewer water, toilet wastewater in his cell, or previously used footwear at Allen County Jail could and likely did bring about the MRSA infection. However, as highlighted by Sheriff Hershberger, the Plaintiff does not dispute that he "has not offered expert testimony as to the circumstances of how he contracted his infection." Pl. Resp. 5, ECF No. 70.

In light of the absence of such expert testimony, the Plaintiff attempts to then establish that the conditions of his confinement at the Allen County Jail caused him physical pain. In this endeavor, the Plaintiff establishes that he experienced physical pain and that physical pain from MRSA is an objectively serious medical condition. He then summarizes Dr. Levin's medical expert opinion as: "Dr. Levin provided expert testimony that the conditions of the jail *worsened* Plaintiff's infection." Pl. Resp. 11, ECF No. 70. However, the Court finds that none of this evidence establishes that the Plaintiff's pain was caused by an unconstitutional condition of his

confinement at the Allen County Jail, such as either of his two cellmates, the sewer water, the toilet wastewater, or the footwear.

Against this finding, the Plaintiff cites *Minkosky v. Gladieux*, No. 1:22-CV-300, 2025 WL 785829, at *3 (N.D. Ind. Mar. 11, 2025), to assert "a ruling similar to Minkosky must be made." Pl. Resp. 13, ECF No. 70. In *Minkosky*, the court determined that "disputed material facts exist regarding whether Minkosky was injured by a lack of exercise." 2025 WL 785829, at *3. However, unlike in *Minkosky*, here the Plaintiff has not offered evidence to create a genuine dispute of fact whether he was injured by an unconstitutional condition of the Allen County Jail, as discussed above.

Accordingly, the Court finds that the Plaintiff has not pointed to evidence establishing that there is a genuine dispute of material fact that an unconstitutional condition of the Allen County Jail caused his MRSA infection or physical pain. As a result, the Court grants, sua sponte, summary judgment in favor of Defendant Sheriff Hershberger and against the Plaintiff as to the Plaintiff's § 1983 *Monell* claim against Defendant Sheriff Hershberger based on an underlying Eighth Amendment violation for unconstitutional conditions of confinement at the Allen County Jail.[3]

---

[3] The Plaintiff waives his argument that "[t]he evidence here, including testimony from Plaintiff and his expert witnesses, creates the reasonable inference that the conditions of the jail, in conjunction with improper medical care, were the 'moving force' for Plaintiff's injuries, including the infection," Pl. Resp. 9–10, ECF No 70, because he does not develop that argument with citation to pertinent legal authority on Defendant Sheriff Hershberger's potential liability for providing improper medical care nor does he identify the facts from the record that establish Defendant Sheriff Hershberger's provision of improper medical care. *See Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived."); *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) ("It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel." (citation omitted)).

**REMAINING STATE LAW CLAIMS**

In the Amended Complaint, the Plaintiff invokes the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the state law medical malpractice claims that are the only remaining claims pending against Defendants Quality Correctional Care, LLC, Nurse Tessa Lehman, Nurse Jeanie Herman, Nurse Jacqueline Ryan, Nurse Kelly Studebaker, Nurse Janie Gilbert, and Mikhail Galperin MD (Count III). *See* ECF Nos. 27, 67. "When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction pursuant to § 1367(c)(3)." *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008). While the decision to exercise supplemental jurisdiction is discretionary, "there is a general presumption that the court will relinquish supplemental jurisdiction." *Rivera v. Allstate Ins. Co.*, 913 F.3d 603, 618 (7th Cir. 2018) (citing *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479–80 (7th Cir. 2012)). "The presumption is rebuttable, but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *RWJ Mgmt. Co., Inc.*, 672 F.3d at 479 (cleaned up). As the Court has not engaged in any meaningful review of the merits of the state law claims and has not otherwise committed substantial judicial resources to it, declining to exercise jurisdiction is proper. *See Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008) ("[T]he district court disposed of the federal claims on summary judgment, and so 'substantial judicial resources' have not yet been committed to the case.").

**CONCLUSION**

Based on the foregoing, the Court hereby sua sponte GRANTS summary judgment in favor of Defendant Sheriff Hershberger and against the Plaintiff as to the Plaintiff's *Monell* claim against Defendant Sheriff Hershberger for an underlying Eighth Amendment violation based on

14

unconstitutional conditions of confinement at the Allen County Jail (Count II). The Court DECLINES to exercise supplemental jurisdiction over the Plaintiff's remaining medical malpractice claims under Indiana law against Defendants Quality Correctional Care, LLC, Nurse Tessa Lehman, Nurse Jeanie Herman, Nurse Jacqueline Ryan, Nurse Kelly Studebaker, Nurse Janie Gilbert, and Mikhail Galperin MD (Count III) and DISMISSES without prejudice those claims.

There being no claims remaining between any parties, the Court DIRECTS the Clerk of Court to ENTER FINAL JUDGMENT stating:

> Final judgment is entered on the federal claim in Count I of the Amended Complaint in favor of the Defendants Quality Correctional Care, LLC, Nurse Tessa Lehman, Nurse Jeanie Herman, Nurse Jacqueline Ryan, Nurse Kelly Studebaker, Nurse Janie Gilbert, and Mikhail Galperin MD and against the Plaintiff Jamone Williams, *see* Mar. 20, 2026 Op. & Order, ECF No. 67, and on the federal claim in Count II of the Amended Complaint in favor Allen County Sheriff Troy Hershberger and against the Plaintiff Jamone Williams as set forth in this Opinion and Order. The Plaintiff Jamone Williams takes nothing on the federal claims in Counts I and II of the Amended Complaint. The Court DISMISSES without prejudice the Plaintiff Jamone Williams' remaining state law medical malpractice claims against Defendants Quality Correctional Care, LLC, Nurse Tessa Lehman, Nurse Jeanie Herman, Nurse Jacqueline Ryan, Nurse Kelly Studebaker, Nurse Janie Gilbert, and Mikhail Galperin MD in Count III of the Amended Complaint.

> SO ORDERED on July 9, 2026.

s/ Theresa L. Springmann  
JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT